UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IAN McCULLOUGH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-00496-TWP-MJD |
| ) | |
| SUPERINTENDENT KEITH BUTTS, ) | |
| ) | |
| Respondent. ) | |

**ENTRY ON PETITION FOR WRIT OF HABEAS
CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Petitioner Ian McCullough's Petition for Writ of Habeas Corpus. McCullough seeks habeas corpus relief with respect to his conviction in the Marion Superior Court for various counts of child molesting. Having considered the pleadings, the expanded record, and the parties' arguments, and being duly advised, the Court finds that McCullough has not shown his entitlement to relief, therefore, his Petition for Writ of Habeas Corpus must be **DENIED.** In addition, the Court finds that a certificate of appealability should not issue. These conclusions are based on the following facts and circumstances:

**I. BACKGROUND**

McCullough was convicted in Marion County in 2008 of three counts of child molesting—two as Class A felonies and one as a Class C felony. His convictions were affirmed in *McCullough v. State*, 2009 WL 69360 (Ind. Ct. App. Jan. 13, 2009) (*McCullough I*), and the denial of his action for post-conviction relief was affirmed in *McCullough v. State*, 973 N.E.2d 62 (Ind. Ct. App. 2012) (*McCullough II*). In this action, McCullough contends that he was denied the effective assistance of counsel both at trial and in his direct appeal. This is a continuation of certain arguments he presented in his action for post-conviction relief in the state courts.

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). McCullough's petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA amended 28 U.S.C. § 2254(d) to narrow the power of federal courts to grant habeas corpus relief to state prisoners. Under that AEDPA, the critical question on the merits of most habeas corpus petitions shifted from whether the petitioner was in custody in violation of the Constitution, laws, or treaties of the United States to a much narrower question: whether the decision of the state court keeping the petitioner in custody was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d). *Avila v. Richardson*, 751 F.3d 534, 535 (7th Cir. 2014).

A federal habeas court "presume[s] that the state courts' account of the facts is accurate, unless the petitioner rebuts this presumption 'by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." *Caffey v. Butler*, 2015 WL 5559399, at *1 (7th Cir. Sept. 22, 2015) (citing *Etherly v. Davis,* 619 F.3d 654, 660 (7th Cir. 2010)). Here, McCullough asserts that the state courts' findings are deficient in this regard, but he fails to show by clear and convincing evidence any unreasonable account of the facts.

The facts underlying McCullough's convictions are set forth in the memorandum decision issued on direct appeal as follows:

> The facts most favorable to the conviction are that L.D. (DOB 1/22/98) is the daughter of Sarah Calvert and Jason Dees. When L.D. was approximately one year old, [Sarah] began dating McCullough, and eventually moved in with him. During the next few years, the couple had two children together, E.M. (DOB

5/14/2000) and M.M. (DOB 6/4/2002). However, in 2003 or 2004, the couple separated. Thereafter, L.D. lived with her mother, [Sarah], in Greenfield, while E.M. and M.M. lived with their father, McCullough, in Indianapolis. On weekends, L.D. would visit with McCullough, whom she referred to as "daddy," and her half-sisters. When she stayed overnight at McCullough's home, L.D. slept in bed with him or in a different room with E.M. and M.M.

At some time before L.D. entered pre-school, McCullough touched her vagina with his fingers. McCullough touched L.D. inappropriately more than once over the next few years. Twice he touched her vagina with his tongue while they were in his bed at his home. Another time, McCullough touched L.D.'s vagina with his finger while she sat in the seat next to him in his vehicle. In the fall [of] 2005, McCullough inserted his finger in L.D.'s vagina. McCullough referred to his actions as a "tickle" and instructed L.D. not to tell anyone lest he get in trouble.

In early December 2005, Judy Calvert ("Judy"), L.D.'s maternal grandmother, with whom she was living at the time, said that L.D. would be visiting with McCullough for the weekend. L.D. became upset, and questioned if she had to go. Moved by L.D.'s tears and pleading, Judy told her she did not have to go but asked why L.D. was reluctant. L.D. replied that she had been masturbating, that she had taught E.M. how to do it, and that she worried that it was wrong. When Judy attempted to assure L.D. that her behavior was not bad per se, L.D. inquired whether it was okay for McCullough to be touching her private parts. Shaking and crying, L.D. confided in her grandmother that McCullough would stop if L.D. asked him to; L.D. made Judy promise not to tell anyone else.

Upon [Sarah's] return home, Judy immediately shared L.D.'s statements with her, and they took L.D. to Riley Children's Hospital that same night. Riley employees and/or [Sarah] reported the allegations to Child Protective Services ("CPS").

*McCullough I,* *1-2.

## II.  ANALYSIS

As noted, the claim in this action is that McCullough was denied the effective assistance of counsel. This is hardly surprising, because complaining about a lawyer's performance after the fact is "a favorite tactic of an unsuccessful criminal defendant." *Ford v. Israel,* 701 F.2d 689, 692 (7th Cir. 1983).

The Sixth Amendment guarantees a criminal accused the right to assistance of counsel, and "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*,

3

397 U.S. 759, 771 n.14 (1970). This guarantee exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984). *Strickland* provides the clearly established Federal law, as determined by the Supreme Court of the United States that governs McCullough's claim.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted).

The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of the claim that McCullough presents, however, AEDPA raises the bar. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). When the AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable--a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal citations and quotations omitted). The emphasis on deferential review could not have been clearer:

> Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be "doubly deferential" in order to afford "both the

4

state court and the defense attorney the benefit of the doubt.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citations and some quotations omitted). A state court unreasonably applies clearly established federal law only if "no fairminded jurist could agree with the state court's" decision. *Davis v. Ayala,* 135 S. Ct. 2187, 2203 (2015). This standard is both mandatory and difficult to meet. *White v. Woodall,* 134 S. Ct. 1697, 1702 (2014).

In addition to the substantive principles just noted, "[i]t is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)); *see also Johnson v. Foster,* 786 F.3d 501, 504 (7th Cir. 2015) ("federal courts will not review a habeas petition unless the prisoner has fairly presented his claims 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'") (quoting *Richardson v. Lemke,* 745 F.3d 258, 268 (7th Cir. 2014), and citing 28 U.S.C. § 2254(b)(1)).

Although ineffective assistance of counsel is a single claim, *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009) (citing *People v. United States,* 403 F.3d 844, 848 (7th Cir. 2005)), the Court must consider each ineffective assistance of counsel argument separately because McCullough was required to have properly presented each such argument to the state courts. *Stevens v. McBride,* 489 F.3d 883, 894 (7th Cir. 2007) (exhaustion provision "requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings.") (quoting *Lewis v. Sternes,* 390 F.3d 1019, 1025 (7th Cir. 2004)); *Kelley v. Secretary for Dep't of Corrections*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("[T]o preserve a claim of ineffective assistance of counsel, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific

acts or omissions of his lawyers that resulted in prejudice.").

In *McCullough II,* it was argued that McCullough had been denied the effective assistance of counsel at trial based on his attorney's actions: (1) in offering and failing to object to evidence of prior uncharged misconduct and failing to object to the prosecutor's references to that misconduct; (2) in failing to adequately cross-examine the State's investigators; (3) in failing to make an offer of proof when the trial court excluded his expert's testimony; (4) in failing to present expert evidence of child memory; (5) in failing to present certain evidence; and (6) in failing to tender or request the jury instruction mandated by Indiana's Protected Person Statute. McCullough's petition to transfer in *McCullough II* presented the first and last of these arguments and the additional argument that the Indiana Court of Appeals had erred in declining to find ineffective assistance of counsel by treating in isolation each of the alleged errors and not properly assessing their cumulative prejudicial impact. These have been associated without objection with habeas claims 1(1), 1(2), 1(7), and 1(8). Petitioner's third issue on transfer was a claim of cumulative error. The petition to transfer was denied on February 12, 2013.

McCullough has committed procedural default with respect to habeas claims 1(3), 1(4), 1(5), and 1(6) because they were not included his petition to transfer and hence were not raised "in one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). His responsive argument that certain broad language in his petition to transfer was sufficient to preserve habeas claims with respect to habeas claims 1(3), 1(4), 1(5), and 1(6) for review in this proceeding is unpersuasive because Indiana does not permit litigants to present argument by incorporation in petitions to transfer. *See Lockridge v. State*, 809 N.E.2d 843, 844 (Ind. 2004) ("In a Petition to Transfer, mere reference to argument and/or authorities presented in brief to [the Court of Appeals], without an explanation of the reasons why transfer should be

granted, does not satisfy [Indiana Appellate] Rule 57(G) (requirements of a transfer petition).").

"A federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (internal citations omitted). Although he does not agree with the respondent's argument as to procedural default, McCullough does not attempt to overcome that default in the event the Court finds the argument persuasive, which it has.

Turning, then, to the claims which have been properly preserved for federal habeas review, "[u]nder AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010). As one court has explained, "[i]t is this Court's obligation to focus on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone,* 967 F.Supp. 152, 156 (E.D.Va. 1997).

The pertinent Sixth Amendment standard has already been identified. The Indiana Court of Appeals recognized that *Strickland* established the controlling law and that two elements must be established to support a showing of ineffective assistance of counsel. *McCullough II,* 973 N.E.2d at 74. *See Carter v. Douma,* 796 F.3d 726, 735 (7th Cir. 2015) ("Under *Strickland's* familiar two-pronged standard, Carter must show both that his counsel's performance was deficient and that he was prejudiced as a result.") (citing *Harrington v. Richter,* 562 U.S. 86, 104 (2011)).

The Indiana Court of Appeals reviewed and carefully evaluated each of McCullough's specifications of ineffective assistance of counsel. In each instance, the Indiana Court of Appeals recognized and identified the governing standard, as determined by the Supreme Court of the

United States, and its analysis did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Atkins v. Zenk,* 667 F.3d 939, 944 (7th Cir. 2012) ("This Court has recognized that federal courts should deny a habeas corpus petition so long as the state court took the constitutional standard 'seriously and produce[d] an answer within the range of defensible positions.'") (quoting *Mendiola v. Schomig,* 224 F.3d 589, 591–92 (7th Cir. 2000)); *Campbell v. Reardon,* 780 F.3d 752, 762 (7th Cir. 2015) ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."). Because its decision was reasonable, "it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

The claim of cumulative error in evaluating the *Strickland* arguments is assigned to the decision in *McCullough II,* not to the performance of trial counsel. However, the Court finds no error to have occurred associated with the ineffective assistance of counsel arguments, so there is no error to become "cumulative." *See Hayes v. Ayers,* 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."); *Turner v. Quarterman,* 481 F.3d 292, 301 (5th Cir. 2007) ("where individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"); *Le v. Mullin,* 311 F.3d 1002, 1023 (10th Cir. 2002) ("a cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors").

McCullough's bid to lay prejudicial blame at the feet of his attorney at trial in the circumstances of this case exceeds the boundaries of a credible complaint. The Seventh Circuit noted in *United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002):

> We have observed in the past that criminal defendants frequently "demonize" their lawyers. "If we are to believe the briefs filed by appellate lawyers, the only reasons defendants are convicted is the bumbling of their predecessors. But lawyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds."

The same is true as to McCullough's arguments that he was denied the effective assistance of counsel. It was explained in *Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997), that:

> the question posed by *Strickland* [is] whether, taking all of the proceedings into account, counsel made "the adversarial testing process work in the particular case." [*Strickland,*] 466 U.S. at 690, 104 S. Ct. at 2066. Counsel must contest the prosecution's case and advance a good defense; if that role has been fulfilled, a writ of habeas corpus should not issue. *See Burris v. Parke,* 116 F.3d 256 (7th Cir. 1997).

McCullough's attorney fulfilled this role at trial.

"[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes,* 112 S. Ct. 1715, 1722 (1992) (O'Connor, J., dissenting) (internal citations omitted). One of these is the doctrine of procedural default. That is the barrier McCullough faces here as to certain of his ineffective assistance of counsel arguments, and he has failed to overcome that barrier. As to the ineffective assistance of counsel arguments which were properly preserved in the Indiana state courts, they do not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, McCullough's petition for writ of habeas corpus must be **DENIED**.

### III. CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell,* 537 U.S. 322, 335 (2003); *Peterson v. Douma,* 751 F.3d 524, 528 (7th Cir. 2014).

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that McCullough has failed to show that reasonable jurists would find it "debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

### IV. CONCLUSION

For the reasons stated above, McCullough's Petition for a Writ of Habeas Corpus (Filing No. 1) must is **DENIED** and the Court **DENIES** a certificate of appealability**.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 10/6/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael K. Ausbrook
mausbrook@gmail.com

Henry A. Flores, Jr.
OFFICE OF THE INDIANA ATTORNEY GENERAL
henry.flores@atg.in.gov